UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

KEITH SCHIEBEL

                                      Plaintiff,

     -against-                                                    1:22-CV-01109 (LEK/DJS)

SCHOHARIE CENTRAL SCHOOL, *et. al.*,

                                      Defendants.

## **MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

      Plaintiff Keith Schiebel commenced this action on October 27, 2022, against the Schoharie Central School District ("SCSD"), Kristen Duguay ("Duguay"), and David Blanchard ("Blanchard") (collectively, "Defendants"), alleging gender bias in violation of Title IX of the Education Amendments of 1982, 20 U.S.C. §§ 1681 *et. seq* ("Title IX") against SCSD, as well as various state torts against all Defendants. Dkt. No. 1 ("Complaint").

      Presently before the Court is Defendants' Motion to Dismiss the Complaint. Dkt. No. 10 ("Motion"). Plaintiff opposes the Motion. Dkt. No. 14 ("Response"). Defendants have submitted a reply to Plaintiff's Response. Dkt. No. 15 ("Reply").

      For the reasons that follow, Defendants' Motion is granted.

**II.    BACKGROUND**

      The following facts, which the Court assumes to be true at this stage, are taken from the Complaint.

      **A.  SCSD's Gender-Based Misconduct Policies**

      SCSD is a public school district located in Schohaire, New York that provides Kindergarten through 12th Grade education. Compl. ¶ 3. At the time of the events of this

Complaint, Blanchard served as SCSD's Superintendent, and DuGuay served as SCSD's Assistant Principal and Title IX Coordinator. Id. ¶¶ 5–6.

SCSD maintains sexual harassment policies in order to comply with Title IX, which prohibits sex-based discrimination in federally funded educational settings. Id. ¶¶ 26–40. SCSD's sexual harassment policies are contained in Policy 7551. Id. Policy 7551's contents are extensive. It prohibits sexual harassment, provides a comprehensive definition of sexual harassment, outlines measures to combat sexual harassment, and explains the procedures used to investigate and adjudicate sexual harassment claims. Id. Relevant here, Policy 7551 states: "Upon receipt of an informal/formal complaint (even an anonymous complaint), [SCSD] will conduct a prompt, equitable, and thorough investigation of the charges." Id. ¶ 37. If the investigation reveals that "[t]hird parties (such as school volunteers, vendors, etc.)" have violated Policy 7551, the third party "will be subject to appropriate sanctions as warranted and in compliance with law." Id. ¶ 38. Policy 7551 also states that "[a]n appeal procedure will also be provided to address any unresolved complaints and/or unsatisfactory prior determinations by the applicable Compliance Officer(s)." Id. ¶ 39.

### B. Plaintiff's Allegations

Plaintiff is an agricultural educator and a professional in the maple producing industry. Compl. ¶¶ 53, 55. Until recently, Plaintiff was employed by the New York State Maple Producers Association ("NYSMPA"), where he helped to organize and manage the Mobile Maple Experience ("MME"). Id. ¶¶ 2, 57–60. MME is an educational program in which a mobile trailer is employed to provide "educational presentations that show[] the history and practice of using maple sap to make syrup and other maple products." Id. ¶ 67. MME has been

used an educational tool in a variety of environments, from the New York State Fair to local schools. Id. ¶ 60.

On June 2, 2021, MME held a presentation for elementary school students. Id. ¶ 62. Plaintiff operated MME that day, and ten high school students served as volunteers for the event. Id. Throughout the day, a number of observers and other volunteers were on-site for the event, including the New York State Commissioner of Agriculture and Markets, two representatives from a local Board of Cooperative Educational Services ("BOCES"), an NYSMPA Executive Committee member, a photographer, and over thirty teachers and teaching assistants. Id. ¶¶ 69–73.

At one point during the day's activities, one of the female high school students supervised by Plaintiff claims that Plaintiff engaged in inappropriate conduct. Id. ¶ 114. The student claimed that Plaintiff "had reached around her with two hands and had touched her breast and buttocks." Id. The day after the alleged incident, the student's mother called SCSD and "explained her daughter declined to go to school that day because she was uncomfortable, because of the man in the trailer." Id. ¶ 112.

After receiving the mother's phone call, SCSD decided to undertake an investigation into the matter pursuant to Policy 7551. Id. ¶ 113. The school's Title IX Coordinator—Vice Principal DuGuay—conducted the investigation. Id. In conducting her investigation, DuGuay contacted the complainant-student, the complainant-student's mother, and another student who was in the trailer at the time of the alleged incident. Id. ¶ 134. The other student "stated that she had not seen anything inappropriate" while she was in the trailer with Plaintiff and the complainant-student. Id. ¶ 135. Other than these two students and the complainant-student's mother, DuGuay did not contact any other individual who was at the MME on June 2, 2021. Id. ¶¶ 133, 149.

3

On June 28, 2021, SCSD Superintendent Blanchard emailed Plaintiff: "Please contact the Superintendent's office at Schoharie regarding an issue a student addressed with the district while the Maple Experience was here on June 2nd." Id. ¶ 77. Plaintiff spoke with Blanchard on the phone the following day, in which Blanchard conveyed that SCSD had received a complaint that Plaintiff had made a student uncomfortable during the MME visit. Id. ¶ 81.

On June 30, 2021—the day after Plaintiff's call with Blanchard—Plaintiff received a call from a Capital Region BOCES representative. Id. ¶ 86. The representative informed Plaintiff "that MME would no longer be welcome" at local BOCES schools if Plaintiff "was personally engaged in the presentations, specifically due to the incident at [SCSD]." Id. ¶ 88. Plaintiff then contacted Blanchard to further discuss the incident. Id. ¶ 93. Two weeks later, on July 12, 2021, Plaintiff and Blanchard agreed to meet in-person on July 16 at SCSD. Id. ¶ 103. Between June 30 and July 12, Plaintiff also sent two e-mail requests to Blanchard requesting "documentation/written reports" regarding the incident. Id. ¶¶ 89, 92. Plaintiff never received the requested "documentation/written reports." Id. ¶ 140. Additionally, at no point prior to the July 16 meeting did Blanchard or any member of the SCSD give Plaintiff the specific details of the allegation. Id. ¶ 158.

Plaintiff, Blanchard, and DuGuay were present at the July 16 meeting. Id. ¶ 105. DuGuay stated at the outset of the meeting "words to the effect to [Plaintiff] that this was a serious matter," and "then stated that her back was to the wall and she was aware of the exits because of her concerns about [Plaintiff]." Id. ¶¶ 107–08. DuGuay then detailed the allegations of the complaint against Plaintiff. Id. ¶ 110. During this discussion, Plaintiff states that "[i]n attempting to recall the events of June 2 [Plaintiff] indicated that he may have reached around a student at one point in the trailer to get something." Id. ¶ 119. Plaintiff did not, however, "state or admit

4

that he had even accidentally touched a student's breast or buttocks." Id. ¶ 122. During this meeting, Plaintiff states that DuGuay "never asked him any specific questions about any alleged touching," "never asked him any specific questions about him using two hands," and displayed a "manner [that] was hostile and accusatory throughout the meeting." Id. ¶¶ 123–24, 127.

On July 30, 2021, DuGuay presented her findings in a formal letter. Id. ¶ 147. That letter stated that Plaintiff's comments that "he may have reached around a student" amounted to "an admission of guilt." Id. ¶ 148. The letter further stated that based "on the totality of the circumstances," DuGuay's "investigation determined that [Plaintiff's] conduct constitutes sexual harassment . . . ." Id. ¶ 151. Plaintiff notes that "DuGuay failed to disclose . . . that the only other potential witness she interviewed claims to have 'witnessed nothing.'" Id. ¶ 150. Plaintiff additionally states that "DuGuay's summary of the investigation was incomplete, unfair and biased against [Plaintiff], including mischaracterizations of his responses." Id. ¶ 152.

DuGuay's July 30 letter was also sent to NYSMPA. Id. ¶ 153. After reviewing the letter, the NYSMPA Board of Directors voted to terminate all of Plaintiff's consulting contracts. Id. ¶ 154.

Plaintiff, via his counsel, requested on August 13, 2021, that Blanchard conduct a supervisory review of DuGuay's findings pursuant to Policy 7551's appeal procedures. Id. ¶ 155. In conducting this review, Plaintiff states that Blanchard relied solely on DuGuay's findings and did not "seek additional evidence or request further comment from [Plaintiff]." Id. ¶ 163. Blanchard's review reaffirmed DuGuay's findings and dismissed Plaintiff's claim that "DuGuay's findings were uncorroborated and unsubstantiated." Id. ¶ 156. Blanchard further stated that Plaintiff "had ample time prior to the meeting with Ms. DuGuay on July 16 to consider the accuracy of the allegations . . . ." Id. ¶ 157.

### III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

### IV. DISCUSSION

Defendants state that Plaintiff's claims must be dismissed because: (1) Plaintiff lacks standing to bring a Title IX claim; (2) Plaintiff has failed to state a Title IX erroneous outcome claim; (3) individual defendants Blanchard and DuGuay are not proper defendants under Title IX; (4) the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims;

6

(5) Plaintiff's state law claims are time barred; and (6) Plaintiff has failed to sufficiently plead his state law claims. See generally Mot.

### A. Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Title IX was designed "to avoid the use of federal resources to support discriminatory practices" and "provide individual citizens effective protection against those practices." Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979). No party disputes that SCSD is subject to Title IX.

Title IX also regulates disciplinary procedures. When commencing disciplinary action against an alleged perpetrator of sexual harassment, Title IX specifically "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." Doe v. Colgate Univ., 760 F. App'x 22, 30 (2d Cir. 2019) (quotations and citations omitted). Plaintiffs may bring claims against schools for improper disciplinary action. Those claims "generally follow either an 'erroneous outcome' theory or a 'selective enforcement' theory." Id.

Plaintiff's Title IX claim proceeds under an erroneous outcome theory. See Compl. ¶¶ 170–180. To prevail under this theory, Plaintiff must show "(1) articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding, and (2) that gender bias was a motivating factor behind the erroneous finding." Doe, 760 F. App'x at 30.

### 1. *Plaintiff Has Standing to Make a Title IX Claim*

The Supreme Court has taken an expansive view of Title IX standing, finding that "Title IX . . . broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'" Jackson v. Birmingham Bd. of Educ., 55 U.S. 167, 181–82 (2005). The Court

has further stated that "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.'" North Haven Bd. of Edu. v. Bell, 456 U.S. 512, 521 (1982) (quoting United States v. Price, 383 U.S. 787, 801 (1966)). Specifically, the Court has taken a very literal approach to the plain meaning of the word "person" in Title IX. "Congress easily could have substituted 'student' or 'beneficiary' for the word 'person' if it had wished to restrict the scope of [Title IX]." Id.

Courts have found that a plaintiff does not necessarily have to be a student or employee of a federally funded institution to have Title IX standing. See, e.g., Doe v. Avon Old Farms Sch., Inc., No. 21-CV-748, 2023 WL 2742330, at *13 (D. Conn. Mar. 31, 2023) ("Title IX is not so limited that it would exclude either of the . . . plaintiffs from its scope simply because neither was a student."); Snyder-Hill v. Ohio State Univ., 48 F.4th 686, 707–09 (6th Cir. 2022) ("[A] non-student and non-employee can bring a Title IX claim if they were subject to discrimination 'while participating, or at least attempting to participate, in the funding recipient's education program or activity.'"); Doe v. Brown Univ., 896 F.3d 127, 132 n.6 (1st Cir. 2018) ("[A] victim does not need to be an enrolled student at the offending institution in order for a Title IX private right of action to exist. Members of the public regularly avail themselves of the services provided by educational institutions receiving federal funding.").

Defendants contend that Plaintiff does not have standing to raise his Title IX claim. Mot. at 5. Defendants state that only beneficiaries of federally funded school programs have Title IX standing. Id. According to Defendants' theory, Plaintiff is not a beneficiary because he is not a SCSD student, employee, resident, or parent, but is rather "a third-party independent contractor." Id. Defendants further argue that Plaintiff "was not denied any educational opportunity or ability to participate in an educational activity." Id.

A plain reading of Title IX does not deprive Plaintiff of standing. The Court notes the paucity of cases that squarely answer whether a third-party contractor constitutes a "beneficiary" under Title IX. Defendants argue that Plaintiff must be a "beneficiary of a federally funded program" and that a third-party contractor such as Plaintiff does not constitute a "beneficiary." Id. However, the Supreme Court has taken an expansive reading of Title IX standing. In applying such a broad reading, this Court finds that Plaintiff is a "beneficiary" under Title IX. The word "person" in the plain text of Title IX's does not place any exclusions on third-party contractors such as Plaintiff. Furthermore, neither party disputes that an employee of a school constitutes a Title IX beneficiary. Here, Plaintiff's role is functionally similar to that of an employee: Plaintiff provided educational services to students, and his salary was in part funded by his visits to SCSD. See supra Part II.B.

Defendants also argue that Plaintiff must show that he has "been denied an educational opportunity or the ability to participate in an educational activity." [1] Mot. at 3. However, that requirement is not found in the language of Title IX. The plain language of Title IX states that Plaintiff must show that he was either "excluded from participation in, [] denied the benefits of, or [] subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Here, the Complaint posits that Plaintiff was

---

[1] Defendants cite HB v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-5881, 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012) for this requirement. Mot. at 3. However, that precise language—that a Plaintiff has standing *only* if he has "been denied an educational opportunity or the ability to participate in an educational activity"—is not exactly employed by the Monroe court. Monroe, 2012 WL 4477552, at *18. Instead, that language seems to come from a parenthetical citation to an out-of-circuit case that states, "Title IX only protects against actions that interfere with educational opportunities or activities." Id. (citing Seiwert v. Spencer–Owen Cmty. Sch. Corp., 497 F. Supp. 2d 942, 954 (S.D. Ind. 2007)). The Monroe court itself does not seem to import such a strict standing requirement. Id. Furthermore, this Court has not found any case law in this Circuit supporting such an elevated standing requirement.

9

discriminated on the basis of gender during a federally funded school's investigation. See Compl. ¶¶ 170–180. This appears to fall squarely within the "subjected to discrimination under an[] education program or activity" portion of Title IX.

In applying the Supreme Court's broad interpretation of Title IX standing, the Court finds that Plaintiff—a contractor with SCSD who alleges gender-based discrimination from SCSD—has Title IX standing.

> 2. *Plaintiff Has Plausibly Plead Articulable Doubt as to the Accuracy of the Outcome of the Disciplinary Proceeding*

The first element of an erroneous outcome claim requires Plaintiff to plead "articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding." Doe, 760 F. App'x at 30. Here, Plaintiff plausibly pleads articulable doubt.

The strongest pillar of Plaintiff's argument is the lack of corroborating evidence. Plaintiff states that only one person in the investigation—the complainant-student—claims to have seen Plaintiff sexually harass the complainant-student. Compl. ¶¶ 133–34. While there were several other people present at the MME on June 2, 2021, the investigation did not produce a single corroborating witness. Id. In fact, another student who was in the trailer at the time of the alleged incident "stated that she had not seen anything like [what the complainant-student described]." Id. ¶ 134. Courts in this Circuit have noted that failure to take into account testimony from witnesses present near or at the time of the alleged misconduct is indicative of articulable doubt. See Doe v. Syracuse Univ., No. 22-CV-644, 2023 WL 4105481 (N.D.N.Y. June 21, 2023) (basing a finding that plaintiff successfully pleaded articulable doubt on evidence that the university "failed to credit testimony [] from the four students who entered the room shortly before sexual encounter, which seemed to indicate nothing amiss").

Plaintiff's case is further strengthened by the insufficiency of the investigation. According to the Complaint, DuGuay only contacted a very small group of witnesses: the complainant-student, the complainant-student's mother, and the other student present in the trailer at the time of the alleged incident. Compl. ¶¶ 133–34. DuGuay did not contact the dozens of other individuals—teachers, other students, visitors—present at MME that day. Id. ¶ 134. Courts in this Circuit have noted that the credibility of Title IX disciplinary outcomes can be called into question by the paucity of witnesses interviewed. See Doe v. Columbia Univ., 551 F. Supp. 3d 433, 468 (S.D.N.Y. 2021), reconsideration denied, No. 20-CV-6770, 2022 WL 16856158 (S.D.N.Y. Nov. 10, 2022) (citing evidence that the university only relied on the allegations of three witnesses in coming to a disciplinary outcome as contributing to a finding of articulable doubt).

Articulable doubt is also shown with respect to DuGuay's characterization of the July 16 meeting with Plaintiff. DuGuay's July 29 letter cites the July 16 meeting, claiming that Plaintiff's statement that he "may have reached around a student" constituted "an admission of guilt." Compl. ¶ 148. Defendants also state that "Plaintiff admits that he told Ms. Duguay that he might have reached around the student in question . . . which supported the student's allegation that Plaintiff had reached around her and, in so doing, came into contact with her buttocks and breast." Id. at 7. The Court disagrees that Plaintiff's statement that he "may have reached around the student" amounts to an admission that Plaintiff engaged in inappropriate touching. According to the Complaint, Plaintiff never told DuGuay or Blanchard that he inappropriately touched the student. Id. ¶ 121. There thus appears to be little basis to presume that Plaintiff's comments during the July 16 meeting constituted "an admission of guilt."

11

Defendants' Motion and Reply offer little to bolster DuGuay's investigation. Defendants focus specifically on Plaintiff's arguments that DuGuay's manner was "hostile and accusatory" and that Plaintiff "was not advised of the substance of the allegations prior to the meeting on July 16, 2021." Reply at 7. Defendants posit that those two arguments are not enough to cast doubt on the outcome of the proceedings. Id. Defendants nevertheless fail to address much of the other evidence put forward by Plaintiff. Specifically, Defendants fail to address the lack of corroborating evidence in the investigation, or the small set of witnesses interviewed by DuGuay. See generally id.

Plaintiff's Complaint plausibly provides enough evidence of articulable doubt as to the accuracy of the outcome of the disciplinary proceedings to meet Rule 12(b)(6)'s pleading standard. The Court therefore finds that Plaintiff has adequately pleaded the first element of an erroneous outcome claim.

### 3. *Plaintiff Has Not Plausibly Pleaded Gender Bias*

The second element of an erroneous outcome claim requires Plaintiff to plead that "gender bias was a motivating factor behind the erroneous finding." Doe, 760 F. App'x at 30. Here, Plaintiff has failed to make an adequate pleading.

Plaintiff provides a very long list in his Response of the many ways in which SCSD failed to conduct a thorough and fair investigation. Resp. at 12–14. Plaintiff further cites case law that states, "[W]hen combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even minimal evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination." Id. at 12 (citing Menaker v. Hofstra Univ., 935 F.3d 20, 33 (2d Cir. 2019)).

Plaintiff's argument fails because he provides no evidence that Defendant-SCSD acted "based on invidious stereotypes." Menaker, 935 F.3d at 33. Plaintiff fails to detail any evidence in his Complaint that SCSD's investigation was at least partially influenced or motivated by gender bias. At no point does Plaintiff point to evidence that shows that the investigation was targeted at Plaintiff or poorly conducted because of Plaintiff's gender or the gender of complainant-student. See generally Compl.

At most, Plaintiff makes broad and conclusory generalities regarding the nationwide treatment of men in sexual harassment cases. Plaintiff states that in the wake of a 2011 letter by the U.S. Department of Education's Office for Civil Rights, an enforcement atmosphere has emerged that is "gender skewed against men." Id. ¶ 43. Plaintiff further claims that "the #Metoo [*sic*] movement has placed pressure upon educational institutions to protect female complainants of sexual misconduct and harassment." Id. ¶ 48. He also claims that at the time of SCSD's investigation, New York Governor Andrew Cuomo was facing an investigation "which was heavily publicized throughout media channels." Id. ¶ 49. In effect, Plaintiff seems to be suggesting that an anti-male bias has pervaded national discourse regarding sexual harassment, and that such a bias tickled down into SCSD's investigation. These generalized suggestions of nationwide anti-male bias are in-and-of-themselves speculative. But to suggest that this purported anti-male environment manifested in SCSD's investigation—with no facts to support such a suggestion—only invites further unsubstantiated speculation.

The Court therefore finds that Plaintiff has failed to plausibly plead enough evidence under the 12(b)(6) standard to meet the gender bias element of an erroneous outcome Title IX claim.

    4. *Claims Against Individual Defendants*

Defendants contend that the Title IX claims should be dismissed against individual defendants Blanchard and DuGuay "because Title IX claims cannot be asserted against individuals." Mot. at 9. While Defendants' reading of Title IX standing is accurate, Plaintiff has not made a Title IX claim against Blanchard or DuGuay. See Compl. ¶¶ 170–180. Instead, Plaintiff only made a Title IX claim against SCSD. Id.

In summary, the Court finds Plaintiff has standing to bring a Title IX claim, and that Plaintiff has plausibly plead articulable doubt as to the accuracy of the outcome of Defendant-SCDS's investigation. However, Plaintiff has not plausibly plead that gender bias was a motivating factor for the erroneous outcome. The Court therefore dismisses Plaintiff's Title IX claim without prejudice.

### B. State Law Claims

If a court has original jurisdiction, it may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Claims arise under the same case or controversy when they "'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding." People ex rel. Abrams v. Terry, 45 F.3d 17, 23 n. 7 (2d Cir.1995) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

Supplemental jurisdiction is traditionally treated as "a doctrine of discretion, not of plaintiff's right." Gibbs, 383 U.S. at 726. A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). If a court's discretion is triggered under § 1367(c)(3), a court must engage in a balancing test and evaluate whether the "values of judicial economy, convenience, fairness, and

comity" permit the court to exercise jurisdiction. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). The Supreme Court has cautioned that these factors should usually encourage a court to decline jurisdiction. See id. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); see also Gibbs, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law . . . . [I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

      Here, Defendants argue that the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims in light of the unviability of Plaintiff's federal claim. Mot. at 9. The Court agrees. This case is in its infancy, as parties have yet to proceed to discovery. See Docket. Courts in this Circuit have noted that when a case is early in the early phases of litigation and has yet to enter discovery, the aforementioned balancing factors weigh heavily against exercising supplemental jurisdiction. See, e.g., Shabtai v. Shabtai, No. 20-CV-10868, 2021 WL 1518382, at *3 (S.D.N.Y. Apr. 16, 2021) ("[T]he pre-discovery stage of the litigation means that the factors of judicial economy, convenience, fairness, and comity point toward declining supplemental jurisdiction."); Goonewardena v. AMR Corp., No. 08-CV-4141, 2008 WL 5049904, at *3 (E.D.N.Y. Nov. 25, 2008) ("The dismissal of the federal claims early on is 'a powerful reason to choose not to continue to exercise jurisdiction.'" (quoting Cohill, 484 U.S. at 350)). Furthermore, there is nothing to suggest that litigation in this Court, rather than state court, would be a more appropriate use of judicial time and resources. Plaintiff can just as fairly and conveniently pursue his state law claims in state court.

Accordingly, Plaintiff's state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

## V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion to dismiss (Dkt. No. 10) is **GRANTED** in its entirety; and it is further

**ORDERED**, that the Clerk is respectfully directed to close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  June 30, 2023
        Albany, New York

LAWRENCE E. KAHN
United States District Judge